IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SYMBOLOGY INNOVATIONS LLC,

                    Plaintiff,

        v.

MILESTONE AV TECHNOLOGIES LLC,
d/b/a SANUS,

                    Defendant.

C.A. No. 1:18-cv-684-GMS

**JURY TRIAL DEMANDED**

**MILESTONE AV TECHNOLOGIES LLC'S OPENING BRIEF IN SUPPORT OF
ITS RULE 12(b)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

FISH & RICHARDSON P.C.
Jeremy D. Anderson (#4515)
222 Delaware Avenue, 17th Floor
P. O. Box 1114
Wilmington, DE  19899-1114
(302) 652-5070 Telephone
(302) 652-0607 Facsimile
janderson@fr.com

Neil J. McNabnay
David B. Conrad
Ricardo J. Bonilla
Theresa M. Dawson
Rodeen Talebi
1717 Main Street, Suite 5000
Dallas, Texas 75201
(214) 747-5070 (Telephone)
(214) 747-2091 (Facsimile)
mcnabnay@fr.com; conrad@fr.com;
rbonilla@fr.com; tdawson@fr.com;
talebi@fr.com

ATTORNEYS FOR DEFENDANT
MILESTONE AV TECHNOLOGIES LLC,
D/B/A SANUS

Dated:  June 28, 2018

## <u>TABLE OF CONTENTS</u>

**Page(s)**

I.  NATURE AND STAGE OF PROCEEDINGS .................................................................1

II.  SUMMARY OF THE ARGUMENT ..........................................................................1

III.  STATEMENT OF THE FACTS ................................................................................2

IV.  LEGAL STANDARDS ............................................................................................4

    A.  Legal Standard for Dismissal Pursuant to Rule 12(b)(6)........................................4

    B.  Patentability is a Threshold Legal Issue. .............................................................4

    C.  The Law of 35 U.S.C. § 101. ...........................................................................5

V.  ARGUMENT .........................................................................................................6

    A.  The Patents-in-Suit are Invalid under 35 U.S.C. § 101. ...........................................6

        1.  *Alice* Step 1. .........................................................................................7

            (a)  Claim 1 of the '752 Patent is directed to the abstract idea of data recognition and retrieval................................................7

        2.  *Alice* Step 2. .......................................................................................12

            (a)  The claims contain no inventive concept to transform the abstract idea into patent-eligible subject matter......................12

        3.  The specifically asserted claims are directed to the abstract idea of data recognition and retrieval. .................................................14

        4.  The remaining claims fail both steps of the *Alice* test. ............................16

        5.  The Disproportionate Risk of Preemption Confirms that the Claims Are Abstract..................................................................18

    B.  Symbology has not pleaded sufficient detail to provide notice of its infringement allegations.........................................................18

VI.  CONCLUSION.....................................................................................................20

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l,*
134 S. Ct. 2347 (2014) .................................................................................... *passim*

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ................................................................................................4

*Bancorp Servs. L.L.C. v. Sun Life Assur. Co.,*
687 F.3d 1266 (Fed. Cir. 2012) .................................................................5, 14, 15

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ..............................................................................................19

*Bilski v. Kappos,*
561 U.S. 593 (2010) .................................................................................4, 5, 6, 7

*buySAFE, Inc. v. Google, Inc.,*
765 F.3d 1350 (Fed. Cir. 2014) ...........................................................................14

*Clear with Computers, LLC v. Dick's Sporting Goods, Inc.,*
21 F. Supp. 3d 758 (E.D. Tex. 2014) ...................................................................17

*Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n,*
776 F.3d 1343 (Fed. Cir. 2014) .........................................................7, 9, 11, 14

*Cuvillier v. Sullivan,*
503 F.3d 397 (5th Cir. 2007) .................................................................................4

*Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.,*
558 F. App'x 988 (Fed. Cir. 2014) ......................................................................11

*CyberSource Corp. v. Retail Decisions, Inc.,*
654 F.3d 1366 (Fed. Cir. 2011) .............................................................................5

*DDR Holdings, LLC v. Hotels.com, L.P.,*
773 F.3d 1245 (Fed. Cir. 2014) ...........................................................................13

*Diamond v. Chakrabarty,*
447 U.S. 303 (1980) ................................................................................................5

*Diamond v. Diehr,*
450 U.S. 175 (1981) ................................................................................................6

*Enfish, LLC v. Microsoft Corp.*,
822 F.3d 1327 (Fed. Cir. 2016).............................................................................13

*Fort Props., Inc. v. Am. Master Lease LLC*,
671 F.3d 1317 (Fed. Cir. 2012)...............................................................................6

*Gibbs v. Coupe*,
No. CV 14-790-SLR, 2015 WL 6870033 (D. Del. Nov. 6, 2015)............................4

*Gottschalk v. Benson*,
409 U.S. 63 (1972)..................................................................................................5

*Intellectual Ventures I LL v. Capital One Bank U.S.A.*,
792 F.3d 1363 (Fed. Cir. 2015)..............................................................................14

*Intellectual Ventures I LLC v. Capital One Fin. Corp.*,
850 F.3d 1332 (Fed. Cir. 2017)..............................................................................10

*Internet Patents Corp. v. Active Network, Inc.*,
790 F.3d 1343 (Fed. Cir. 2015).........................................................................12, 15

*Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*,
66 F. Supp. 3d 829 (E.D. Tex. 2014)......................................................................18

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
132 S. Ct. 1289 (2012)...........................................................................................5, 6

*Morales v. Square, Inc.*,
75 F. Supp. 3d. 716 (W.D. Tex. 2014).....................................................................7

*Parker v. Flook*,
437 U.S. 584 (1978).................................................................................................6

*Phoenix Licensing, L.L.C. v. Consumer Cellular, Inc.*,
No. 2:16-cv-152-JRG-RSP, 2017 WL 1065938 (E.D. Tex. Mar. 8, 2017) .............7

*Recognicorp, LLC v. Nintendo Co., Ltd.*,
855 F.3d 1322 (Fed. Cir. 2017)...................................................................... *passim*

*Secured Mail Solutions LLC v. Universal Wilde, Inc.*,
873 F.3d 905 (Fed. Cir. 2017)......................................................................... *passim*

*In re TLI Commc'ns LLC Patent Litigation*,
823 F.3d 607 (Fed. Cir. 2016)...............................................................................13

*Ultramercial, Inc. v. Hulu, LLC*,
772 F.3d 709 (Fed. Cir. 2014) (Mayer, J., concurring)............................4, 8, 11, 12

*Victaulic Co. v. Tieman,*
    499 F.3d 227 (3rd Cir. 2007) ................................................................................4

**Statutes**

35 U.S.C. § 101 ......................................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ............................................................................2, 4, 6, 7

## I.     NATURE AND STAGE OF PROCEEDINGS

On May 4, 2018, Symbology filed this lawsuit accusing Milestone AV Technologies LLC, d/b/a SANUS, ("SANUS") of infringing U.S. Patent Nos. 8,424,752 (the "'752 Patent"); 8,651,369 (the "'369 Patent"); and 8,936,190 (the "'190 Patent") (collectively, the "Patents-in-Suit"). Symbology accuses SANUS of infringing "one or more claims" of the Patents-in-Suit[1] by SANUS's alleged "using and/or incorporating" a Quick Response Code ("QR code") onto product packaging. Compl. ¶¶ 23, 37, 51.

## II.    SUMMARY OF THE ARGUMENT

SANUS requests that the Court dismiss this case because the Patents-in-Suit do not embrace patent-eligible subject matter. The claims of the Patents-in-Suit are directed to the abstract idea of data recognition and retrieval, and none of the claims recites any specific non-conventional hardware or software. In *Secured Mail Solutions LLC v. Universal Wilde, Inc.*, 873 F.3d 905 (Fed. Cir. 2017), the Federal Circuit held claims directed to decoding a QR code like those at issue here invalid under both *Alice* steps. The claims of the Patents-in-Suit cannot be meaningfully distinguished from the *Secured Mail* claims and are thus invalid for the same reasons.

Additionally, the Complaint fails because it does not allege any facts suggesting that SANUS even practices the claimed abstract idea. Instead, Symbology's Complaint alleges that SANUS practices the admitted prior art, rather than infringement of the Patents-in-Suit, and nothing in the Complaint suggests that SANUS has performed the claimed invention.

---

[1] In its Complaint, Symbology asserts that SANUS: "has infringed and continues to infringe one or more claims, including at least Claim 6, of the '752 Patent" (D.I. 1 ("Compl.") ¶ 23); "has infringed and continues to infringe one or more claims, including at least Claim 6, of the '369 Patent" (*id.* ¶ 37); and "has infringed and continues to infringe one or more claims, including at least Claim 6, of the '190 Patent" (*id.* ¶ 51).

Resolving these issues does not require discovery or formal claim construction. To avoid waste of judicial and party resources unnecessarily litigating invalid patents, SANUS thus requests that the Court dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.

## III.    STATEMENT OF THE FACTS

The Patents-in-Suit are entitled "System and Method for Presenting Information about an Object on a Portable Electronic Device" and share the same Abstract and the same specification. They are directed to "enabling a portable electronic device to retrieve information about an object when the object's symbology, e.g., a barcode, is detected." '752 Patent at Abstract; '369 Patent at Abstract; and '190 Patent at Abstract.

Claim 1 of the '752 Patent, set forth below, is representative of the claims in the Patents-in-Suit:

1. A method comprising:

capturing a digital image using a digital image capturing device that is part of a portable electronic device;

detecting symbology associated with an object within the digital image using a portable electronic device;

decoding the symbology to obtain a decode string using one or more visual detection applications residing on the portable electronic device;

sending the decode string to a remote server for processing;

receiving information about the object from the remote server wherein the information is based on the decode string of the object.;

displaying the information on a display device associated with the portable electronic device.

'752 Patent at cl. 1.

2

This claim can be broken down into six main steps: (1) <u>capturing</u> an image with a camera or a scanner on a "portable electronic device" (e.g., taking a photograph or scanning an image with a smartphone); (2) <u>detecting</u> a symbology (e.g., recognizing a barcode in the captured image); (3) <u>decoding</u> the symbology to obtain a "decode string" (e.g., reading information from the barcode); (4) <u>sending</u> the "decode string" to a "server" for processing (e.g., requesting a webpage based on the information obtained from the barcode); (5) <u>receiving</u> information from the "server" in response (e.g., receiving the contents of the webpage ); and (6) <u>displaying</u> the information received on the portable electronic device (e.g., displaying a webpage). Put simply, these steps are directed to recognizing and retrieving information associated with a pattern.

The applicant made clear through his own language in the specification that the components and processes for carrying out the claimed method were conventional. For example, the claimed "portable electronic device" can be virtually any mobile device capable of taking a photograph or scanning an image. *Id*. at 1:58-61 ("Examples of the portable electronic devices that contain both applications and imaging systems include Apple Computer's IPhone, Google's Droid, and various mobile devices from Motorola"); *id*. at 2:57-61 ("Using any applicable visual detection device (e.g., a camera, scanner, or other device) on the portable electronic device, the user may select an object by scanning or capturing an image of symbology (e.g., barcodes) associated with the object."). The applicant further acknowledged that various programs and applications operable on a portable electronic device to scan and decode a barcode were available in the prior art. *Id*. at 3:29-33 ("Examples of applications that allow scanning include Neomedia's Neo Reader, Microsoft's Smart Tags, Android's Shop Savvy, Red Laser, ScanBuy, etc."). According to the Patents-in-Suit, once a barcode is decoded (using any of these existing applications), the "decode string" (i.e., the information obtained from the barcode) is then "sent"

3

to a "remote server" to retrieve information (e.g., webpage content) that is then displayed on the portable electronic device. *Id*. at 3:21–28.

## IV.   LEGAL STANDARDS

### A.   Legal Standard for Dismissal Pursuant to Rule 12(b)(6).

Under Rule 12(b)(6), a party may move to dismiss a complaint that fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion, a complaint "must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3rd Cir. 2007) (citation omitted). In deciding a Rule 12(b)(6) motion, courts consider documents attached to or incorporated into the complaint as well as facts alleged in the complaint. *Gibbs v. Coupe*, No. CV 14-790-SLR, 2015 WL 6870033, at *1 (D. Del. Nov. 6, 2015) (citation omitted). Although factual allegations are taken as true, legal conclusions are given no deference—those matters are left for the court to decide. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting tenet that allegations are taken as true on a motion to dismiss "is inapplicable to legal conclusions"). "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief [as a matter of law], this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Sullivan*, 503 F.3d 397, 401 (5th Cir. 2007) (internal citations and quotations omitted).

### B.   Patentability is a Threshold Legal Issue.

Patentability under 35 U.S.C. § 101 is a threshold legal issue. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Accordingly, the § 101 inquiry is properly raised at the pleadings stage if it is apparent from the face of the patent that the asserted claims are not directed to eligible subject matter. *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 718–19 (Fed. Cir. 2014) (Mayer, J., concurring). In those situations, claim construction is not required to conduct a § 101 analysis.

4

*Bancorp Servs. L.L.C. v. Sun Life Assur. Co.*, 687 F.3d 1266, 1273 (Fed. Cir. 2012) ("[W]e perceive no flaw in the notion that claim construction is not an inviolable prerequisite to a validity determination under § 101.").

### C.     The Law of 35 U.S.C. § 101.

Section 101 of the Patent Act sets forth four categories of patentable subject matter: "any new and useful process, machine, manufacture, or composition of matter." 35 U.S.C. § 101. Also, the law recognizes three exceptions to patent eligibility: "laws of nature, physical phenomena, and ***abstract ideas***." *Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980) (emphasis added). Abstract ideas are ineligible for patent protection because a monopoly over these ideas would preempt their use in all fields. *See Bilski*, 561 U.S. at 611-12. In other words, "abstract intellectual concepts are not patentable, as they are the basic tools of scientific and technological work." *Id.* at 653 (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)).

Determining whether a patent claim is impermissibly directed to an abstract idea involves two steps. First, the court determines "whether the claims at issue are directed to a patent-ineligible concept." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014). Second, if the claim contains an abstract idea, the court evaluates whether there is "an 'inventive concept'—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* (internal quotations and citations omitted).

Transformation into a patent-eligible application requires "more than simply stating the abstract idea while adding the words 'apply it.'" *Id*. at 2357 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1294 (2012)). Indeed, if a claim could be performed in the human mind, or by a human using pen and paper, it is not patent-eligible. *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011). Also, a claim is not

meaningfully limited if it includes only token or insignificant pre- or post-solution activity—such as identifying a relevant audience, category of use, field of use, or technological environment. *Mayo*, 132 S. Ct. at 1297–98, 1300–01; *Bilski*, 561 U.S. at 610; *Diamond v. Diehr*, 450 U.S. 175, 191–92 & n.14 (1981); *Parker v. Flook*, 437 U.S. 584, 595 n.18 (1978). Finally, "simply appending conventional steps, specified at a high level of generality, to laws of nature, natural phenomena, and abstract ideas cannot make those laws, phenomena, and ideas patentable." *Mayo*, 132 S. Ct. at 1300; *see also Fort Props., Inc. v. Am. Master Lease LLC*, 671 F.3d 1317, 1323 (Fed. Cir. 2012) ("Such a broad and general limitation does not impose meaningful limits on the claim's scope.").

## V.     ARGUMENT

For at least two reasons, the Court should dismiss Symbology's Complaint pursuant to Rule 12(b)(6) for failure to state a claim. First, Symbology's claims, which are directed to decoding a QR code cannot be meaningfully distinguished from those held patent-ineligible in *Secured Mail* and other cases and should thus be dismissed on the same grounds. Second, the Complaint should be dismissed because Symbology fails to allege facts to show plausibility of its patent infringement claims.

### A.     The Patents-in-Suit are Invalid under 35 U.S.C. § 101.

Symbology's Complaint should be dismissed. The claims of the Patents-in-Suit are invalid under 35 U.S.C. § 101 because they fail both prongs of the *Alice* test. Each of the claims is directed to the abstract idea of data recognition and retrieval. Abstract ideas are not eligible for patenting. None of the claims contains an "'inventive concept' . . . sufficient to ensure that the patent in practice amounts to ***significantly more*** than a patent upon the ineligible concept itself." *See Alice*, 134 S. Ct. at 2355 (emphasis added). Because Symbology has failed to state a claim

upon which relief may be granted, SANUS respectfully requests that the Court grant its motion and dismiss this case with prejudice. Fed. R. Civ. P. 12(b)(6).

> 1. *Alice* **Step 1.**

In determining patent eligibility under § 101, the Court must first determine whether the claims are directed to an abstract idea. *Alice*, 134 S. Ct. at 2355. Under any plausible reading, the claims of the Patents-in-Suit are directed to an unpatentable, abstract idea because they claim nothing more than the "longstanding," "routine," and "conventional" concept of data recognition and retrieval. *See Alice*, 134 S. Ct. at 2356-59; *Bilski*, 561 U.S. at 611.

> **(a)   Claim 1 of the '752 Patent is directed to the abstract idea of data recognition and retrieval.**

Claim 1 of the '752 Patent is representative of the claims.[2] *See, e.g.*, *Phoenix Licensing, L.L.C. v. Consumer Cellular, Inc.*, No. 2:16-cv-152-JRG-RSP, 2017 WL 1065938, at *8–9 (E.D. Tex. Mar. 8, 2017) (invalidating 974 claims after analyzing only a few "representative claims" where the other claims were "substantially similar" and "linked to the same abstract idea."). In assessing whether this claim is directed to an abstract idea, the Court must look past the claim language for the purpose of the claim to determine what the invention is trying to achieve. *Morales v. Square, Inc.*, 75 F. Supp. 3d. 716, 725 (W.D. Tex. 2014), *aff'd*, 621 F. App'x 660 (Fed. Cir. 2015), *cert. denied*, 136 S. Ct. 1461 (2016). All Claim 1 of the '752 Patent explains is a way to use a barcode to obtain information in order to access a webpage, consisting of nothing more than a set of basic ideas like capturing, detecting, decoding, sending, receiving, and displaying data:

---

[2] Where claims are "substantially similar and linked to the same abstract idea," courts may look to representative claims in a § 101 analysis. *Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014).

| Claim Language | Claimed Idea |
|---|---|
| A method comprising: | |
| capturing a digital image using a digital image capturing device that is part of a portable electronic device; | capturing data |
| detecting symbology associated with an object within the digital image using a portable electronic device; | detecting data |
| decoding the symbology to obtain a decode string using one or more visual detection applications residing on the portable electronic device; | decoding data |
| sending the decode string to a remote server for processing; | sending data |
| receiving information about the object from the remote server wherein the information is based on the decode string of the object.; | receiving data |
| displaying the information on a display device associated with the portable electronic device. | displaying data |

At a high level, this claim describes the most generic functional steps of a standard computer (i.e., capturing, detecting, decoding, sending, receiving, and displaying data). Such a broad concept is not patent eligible because it "recite[s] an abstraction—an idea, having no particular concrete or tangible form." *Ultramercial*, 772 F.3d at 715. That the claim purports to implement the steps with conventional components like a "portable electronic device," a "remote server," a "display device," and generic "visual detection applications" does not make it any less abstract.

The specification (shared by the Patents-in-Suit) admits that barcode scanning and decoding programs were prevalent at the time of the invention. '752 Patent at 3:29-36. Indeed, the claims implement this prior-art technology to carry out the steps of capturing, detecting, decoding, and retrieving information from a server. Claim 1 of the '752 Patent does no more than

8

recognize an image, decode the image, then do something based upon the decoded information with existing technology. It is thus directed to the abstract idea of data recognition and retrieval.

Courts have found similar patent claims to be ineligible. In *Content Extraction*, the claims generally recited "a method of 1) extracting data from hard copy documents using an automated digitizing unit such as a scanner, 2) recognizing specific information from the extracted data, and 3) storing that information in a memory." *Content Extraction*, 776 F.3d at 1345. The claimed method "could be performed by software on an automated teller machine (ATM) that recognizes information written on a scanned check, such as the check's amount, and populates certain data fields with that information in a computer's memory." *Id.* The Federal Circuit concluded in *Alice*'s first step that the claims were "drawn to the abstract idea of 1) collecting data, 2) recognizing certain data within the collected data set, and 3) storing that recognized data in a memory"; or, put simply: "data recognition and storage." *Id.* at 1347. In rejecting the plaintiff's argument that the claims were not abstract because they required the use of a scanner, the Federal Circuit likened the claims to those found abstract in *Alice*, which "also required a computer that processed streams of bits." *Id.* Like the *Content Extraction* claims, Claim 1 of the '752 Patent is abstract because it simply decodes an image to obtain information and then retrieves data from a server based on that information. The claims in *Content Extraction* were directed to data recognition and *storage*, whereas the Patents-in-Suit are directed to data recognition and *retrieval*—the former claims stored the recognized data, while the latter claims retrieve additional data based on the recognized data.

In *Recognicorp, LLC v. Nintendo Co., Ltd.*, 855 F.3d 1322 (Fed. Cir. 2017), the Federal Circuit found the patent claim at issue to be directed toward the abstract idea of "encoding and decoding image data." *Recognicorp*, 855 F.3d at 1324. The claim at issue in *Recognicorp* recited:

A method for creating a composite image, comprising:

displaying facial feature images on a first area of a first display via a first device associated with the first display, wherein the facial feature images are associated with facial feature element codes;

selecting a facial feature image from the first area of the first display via a user interface associated with the first device,

wherein the first device incorporates the selected facial feature image into a composite image on a second area of the first display, wherein the composite image is associated with a composite facial image code having at least a facial feature element code and wherein the composite facial image code is derived by performing at least one multiplication operation on a facial code using one or more code factors as input parameters to the multiplication operation; and

reproducing the composite image on a second display based on the composite facial image code.

*Id.* The Federal Circuit described the claim as a "method whereby a user displays images on a first display, assigns image codes to the images through an interface using a mathematical formula, and then reproduces the image based on the codes." *Id.* at 1326. The Federal Circuit found that this method reflected "standard encoding and decoding." *Id*.

The Federal Circuit then explained that encoding and decoding data is "an abstract concept long utilized to transmit information." *Id.* (citing *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1340–41 (Fed. Cir. 2017) (organizing, displaying, and manipulating data encoded for human- and machine-readability is directed to an abstract concept)). The Federal Circuit provided several examples of long-utilized methods of encoding and decoding of data to transmit information: "Morse code, ordering food at a fast food restaurant via a numbering system, and Paul Revere's 'one if by land, two if by sea' signaling system all exemplify encoding at one end and decoding at the other end." *Id.* Claim 1 of the '752 Patent likewise simply decodes an image to obtain information, an abstract concept.

Most recently, in *Secured Mail*, the Federal Circuit found claims directed to encoding and decoding a QR code invalid under both *Alice* steps. 873 F.3d 905. The *Secured Mail* claims "provide[d] a method whereby a barcode is generated, affixed to a mail object, and sent through the mail system [and t]hen, upon receipt, the barcode is scanned, and data corresponding to the sender is sent to the recipient over the network and displayed on the recipient's device." *Id*. at 910–11. The Federal Circuit found that "each step of the process is directed to the abstract process of communicating information about a mail object using a personalized marking." *Id.* at 911. And because the claims were "non-specific and lack[ed] technical detail," utilizing "well known" technologies and generic hardware, the Federal Circuit concluded that the claims lacked an inventive concept. *Id*. at 912.

The idea underlying Claim 1 of the '752 Patent is just as abstract as that of the *Content Extraction*, *Recognicorp*, and *Secured Mail* claims. Claim 1 of the '752 Patent does not include any specific limitations or steps regarding extracting data or decoding the data. Rather, all of the steps required to carry out the method are directed to the generic, conventional ideas of recognizing an image, decoding the image, then doing something based upon the decoded information. *Cyberfone Sys., LLC v. CNN Interactive Grp., Inc*., 558 F. App'x 988, 992 (Fed. Cir. 2014) (finding claim directed to "the well-known concept of categorical data storage, i.e., the idea of collecting information in classified form, then separating and transmitting that information according to its classification, is an abstract idea that is not patent-eligible"). That Claim 1 of the '752 Patent sends and receives the decoded information over a network does not make it any less abstract. *See, e.g.*, *Ultramercial*, 772 F.3d at 716 (noting that "the use of the Internet is not sufficient to save otherwise abstract claims from ineligibility under § 101") (citation omitted).

By only claiming the desired result—recognizing and retrieving information associated with a pattern like a barcode—without describing any specific roadmap for doing so, Claim 1 of the '752 Patent falls short of claiming eligible subject matter under § 101. *See Internet Patents*, 790 F.3d at 1348; *Secured Mail*, 873 F.3d at 910–11.

### 2.     *Alice* Step 2.

Because Claim 1 of the '752 Patent is directed to an abstract idea, the Court must next determine whether it contains an "inventive concept sufficient to transform the claimed abstract idea into a patent eligible application." *Alice*, 134 S. Ct. at 2357 (internal quotations omitted). To pass this test, Claim 1 of the '752 Patent "must include additional features" that "must be more than well-understood, routine, conventional activity." *Ultramercial*, 772 F.3d at 715 (quotation omitted). Here, Claim 1 of the '752 Patent is broadly generic and does not contain meaningful limitations that would restrict it to a non-routine, specific application of the abstract idea.

### (a)     The claims contain no inventive concept to transform the abstract idea into patent-eligible subject matter.

Each of the steps recited in Claim 1 of the '752 Patent is described only at a high level of generality as "capturing a digital image," "detecting" a barcode, "decoding [the barcode] . . . to obtain a decode string," "sending the decode string to a remote server for processing," "receiving information . . . from the remote server," and "displaying the information." To accomplish these steps, Claim 1 of the '752 Patent recites the use of a "portable electronic device," "visual detection applications," and a "remote server." But the claimed "portable electronic device" can be virtually any device capable of taking a photograph ('752 Patent at 1:58–61), the "visual detection applications" can be a variety of off-the-shelf applications that users have installed on their smartphones (*id*. at 3:29-33), and the claimed "server" is implemented using generic hardware (*id*. at 9:65-10:1) to perform generic website functions (*id*. at 5:33-42).

The applicant's own characterizations demonstrate that the claimed components do not "improve the functioning of the computer itself," *Alice*, 134 S. Ct. at 2359, for example by disclosing an "improved, particularized method of digital data compression," *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1259 (Fed. Cir. 2014), or improving "the way a computer stores and retrieves data in memory," *Enfish, LLC v. Microsoft Corp*., 822 F.3d 1327, 1339 (Fed. Cir. 2016). For example, in *Enfish*, the Federal Circuit distinguished the claims from others that "simply add[ed] conventional computer components to well-known business practices," *Id.* at 1338, holding instead that "they [we]re directed to a specific improvement to the way computers operate," *Id.* at 1336. In particular, the unconventional structure of the database resulted in "increased flexibility, faster search times, and smaller memory requirements." *Id.* at 1337. Unlike *Enfish*, nothing in Claim 1 of the '752 Patent shows any unconventional methodology that would amount to a "specific improvement to the way computers operate." Therefore, the focus of the Patents-in-Suit is not "on [a] specific asserted improvement in computer capabilities" but instead "on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." *Id.* at 1336.

There is simply nothing "inventive" about using a known process (i.e., decoding a barcode) to access a website. *See Secured Mail*, 873 F.3d at 912. Moreover, the abstract functional descriptions in Claim 1 of the '752 Patent are devoid of any technical explanation as to how to implement the purported invention in an inventive way. *See In re TLI Commc'ns LLC Patent Litigation*, 823 F.3d 607, 615 (Fed. Cir. 2016) (claims failed *Alice*'s step 2 where specification limited its discussion of "additional functionality" of conventional components "to abstract functional descriptions devoid of technical explanation as to how to implement the invention"). Similar to the invalidated claim in *Recognicorp*, nothing in Claim 1 of the '752

Patent "'transforms' the abstract idea of . . . decoding," i.e., recognizing information, "into patent-eligible subject matter." 855 F.3d at 1328 (citing *Alice*, 134 S. Ct. at 2357).

Courts have repeatedly held that the presence of generic hardware and software like the kind recited in Claim 1 of the '752 Patent does not make an otherwise abstract idea patent-eligible. *See, e.g.*, *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) ("That a computer receives and sends the information over a network—with no further specification—is not even arguably inventive."); *Content Extraction*, 776 F.3d at 1348 ("At most, [the] claims attempt to limit the abstract idea of recognizing and storing information from hard copy documents using a scanner and a computer to a particular technological environment. Such a limitation has been held insufficient to save a claim in this context."); *Bancorp*, 687 F.3d at 1276–77. In addition, an "abstract idea does not become nonabstract by limiting the invention to a particular field of use or technological environment, such as [mobile services]." *Intellectual Ventures I LL v. Capital One Bank U.S.A.*, 792 F.3d 1363, 1366 (Fed. Cir. 2015). Claim 1 of the '752 Patent is thus ineligible under step two of *Alice*.

Because each of the claims of the Patents-in-Suit is altogether devoid of any "inventive concept," they are all patent-ineligible under § 101. *See Alice*, 134 S. Ct. at 2359–60.

### 3. The specifically asserted claims are directed to the abstract idea of data recognition and retrieval.

Symbology asserts Claim 6 of the '752 Patent, Claim 6 of the '368 Patent, and Claim 6 of the '190 Patent. These three claims are identical and each is dependent on Claim 5 of their respective patents. Claims 5 and 6 of the '752 Patent, set forth below, are representative:

> 5. The method of claim 1, wherein the one or more visual detection systems are configured to automatically detect the symbology.

> 6. The method of claim 5, further comprising:

>> alerting the user when an image containing symbology has been detected;

14

> asking the user if decoding of the symbology is desired; and
>
> receiving a reply from the user.

'752 Patent at cls. 5, 6.

The steps in Claim 6 merely automate a process that was otherwise done manually. While the applicant longed to provide a more convenient way to select an "appropriate" scanning/decoding application "automatically" from the "dozens of applications" that may reside on a user's portable electronic device, alert the user if a symbology is detected, and ask the user if decoding is desired, he failed to disclose any details of how that was to be accomplished in any non-conventional way. *See Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1348 (Fed. Cir. 2015) (concluding that claim not directed to patent-eligible subject matter where "[t]he mechanism for maintaining the state is not described, although this is stated to be the essential innovation."). Moreover, running an application in the background, performing a task more efficiently, or automating something that was otherwise done manually, does not confer patent eligibility. *See Bancorp*, 687 F.3d at 1279 ("Using a computer to accelerate an ineligible mental process does not make that process patent-eligible.").

The purported point of novelty of the Patents-in-Suit is the ***result*** of providing a convenient way for scanning barcodes by automating the "difficult" task of manually "select[ing] the appropriate application" to scan barcodes ('752 Patent at 3:36–47), but the specifically asserted dependent Claim 6 of the '752 Patent, dependent Claim 6 of the '369 Patent, and dependent Claim 6 of the '190 Patent do not describe any particular non-conventional ***mechanism*** for achieving the ***result***. Claim 6 also falls short of claiming eligible subject matter under § 101. *See Internet Patents*, 790 F.3d at 1348; *Secured Mail*, 873 F.3d at 910–11.

15

### 4.    The remaining claims fail both steps of the *Alice* test.

The remaining claims of the Patents-in-Suit relate to the same abstract concept of data recognition and retrieval. Each of the other independent claims refers only to standard computing means for decoding data. For example, the claims describe a "computer application" comprising "logic" ('752 Patent at cl. 17; '369 Patent at cl. 17), or a "symbology management application" ('752 Patent at cl. 24; '369 Patent at cl. 24; '190 Patent at cl. 20), to perform each of the steps in Claim 1 of the '752 Patent. Other claims replace the terms "object within digital image" with "digital image" ('369 Patent, cl. 1; '190 Patent at cl. 1) and "electronic device" with "portable electronic device" ('190 Patent at cl. 17). These claims are thus indistinguishable from Claim 1 of the '752 Patent.

The dependent claims recite limitations for: (1) running visual detection applications in the background ('752 Patent (cls. 4, 25), '369 Patent (cls. 4, 25), and '190 Patent (cl. 4)); (2) configuring visual detection applications to automatically detect barcodes ('752 Patent (cl. 5), '369 Patent (cl. 5), and '190 Patent (cl. 5)); and (3) analyzing the decode string and selecting appropriate application to decode ('752 Patent (cl. 9), '369 Patent (cl. 9), and '190 Patent (cl. 9)). These are either additional standard computing functions (i.e., running in the background) or ideas to which the patentee forgot to disclose details about how to achieve the function (i.e., automatically detect, selecting the appropriate application). Other dependent claims recite insignificant pre- or post-solution activity, such as allowing a user to select certain preferences or store data:

16

| Pre- or Post-Solution Activity | Claims |
| --- | --- |
| enabling users to select certain preferences | '752 Patent (cls. 2, 3, 18)<br>'369 Patent (cls. 2, 3, 18)<br>'190 Patent (cls. 2, 3, 18) |
| detecting barcodes based on user request | '752 Patent (cl. 7)<br>'369 Patent (cl. 7)<br>'190 Patent (cl. 7) |
| sending instructions to visual detection applications and remote servers | '752 Patent (cl. 8)<br>'369 Patent (cl. 8)<br>'190 Patent (cl. 8) |
| enabling the user to store information | '752 Patent (cl. 11)<br>'369 Patent (cl. 11)<br>'190 Patent (cl. 11) |
| providing e-commerce options to the user | '752 Patent (cl. 12)<br>'369 Patent (cl. 12)<br>'190 Patent (cl. 12) |
| decoding barcodes using visual search technology | '752 Patent (cls. 15, 23)<br>'369 Patent (cls. 15, 23)<br>'190 Patent (cl. 15) |

The remaining claims of the Patents-in-Suit are also patent-ineligible. These claims recite activity like alerting the user and asking to decode a barcode, analyzing a decode string and selecting the appropriate application to decode, allowing the user to select an application to decode the barcode, and displaying information and images. *See, e.g.*, '752 Patent at cls. 10, 13, 14, 16, 19, 20, 21, 22, 26, 27, 28; '369 Patent at cls. 10, 13, 14, 16, 19, 20, 21, 22, 26, 27, 28; and '190 Patent at cls. 10, 13, 14, 16, 19.

Each of these claims, like Claim 1 of the '752 Patent, are not meaningfully limited because these activities are not "essential to the invention." *Clear with Computers, LLC v. Dick's Sporting Goods, Inc.*, 21 F. Supp. 3d 758, 763 (E.D. Tex. 2014) (noting limitations must "do more than recite pre- or post-solution activity, they [must be] central to the solution itself" to be meaningful) (quotations omitted). Because all of these claims are directed to the abstract idea of

data recognition and retrieval and none include any inventive concept, the claims similarly fail both steps of the *Alice* test.

     **5.**     **The Disproportionate Risk of Preemption Confirms that the Claims Are Abstract.**

Because the claimed methods and systems can be implemented using virtually any device capable of taking a photograph, any off-the-shelf scanning/decoding application, and any conventional server capable of sending and receiving information, the Patents-in-Suit risk preempting *all* automated methods or systems for recognizing a pattern, like a barcode, and retrieving data based on that. *See, e.g.*, *Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, 66 F. Supp. 3d 829, 843 (E.D. Tex. 2014) (finding "preemptive effect . . . broad" where "the claims [were] largely functional in nature, they [did] not provide any significant description of the particular means by which the various recited functions are performed," and "[a]ll that [was] disclosed [was] the ultimate objective"). Therefore, the claims implicate the same preemption concern undergirding the § 101 analysis and should be found ineligible.

     **B.**     **Symbology has not pleaded sufficient detail to provide notice of its infringement allegations.**

Symbology's Complaint alleges that SANUS infringes (at least) Claim 6 of the '752 Patent. Compl. ¶¶ 23, 37, 51. In support of this allegation, the Complaint states that SANUS "uses a visual detection system (e.g., a smartphone camera and QR code scanning application) that is configured to alert the user when an image containing symbology has been detected (e.g., once the QR code is scanned the user receives notification **asking user whether to open Defendant's website**)." Compl. ¶¶ 29, 43, 57 (emphasis added). But Claim 6 of the '752 Patent requires "alerting the user when an image has been detected [and] asking the user if decoding of the symbology is desired" ('752 Patent at cl. 6), not detecting and decoding the barcode, and then asking the user "whether to open a website." Fig. 7A describes the flow chart for the claim:

18



FIG. 7A

'752 Patent at Fig. 7A. As this flowchart demonstrates, the alleged invention in Claim 6 requires asking the user **before** decoding a barcode. No reasonable interpretation of Claim 6 of the '752 Patent could hold that the claim would ask whether to decode after decoding occurs, contrary to Fig. 7A.

In the specification, the applicant refers to ordinary barcode-scanning applications that existed in the prior art. '752 Patent at 3:30:33. These scanning applications did not ask the user before decoding a barcode, rather the only user prompt was to ask whether or not to visit the decoded URL. Symbology states this prior art functionality in its Complaint, and then alleges that by using this functionality, SANUS is somehow infringing its alleged invention. Compl. ¶¶ 29, 43, 57. At best, Symbology's Complaint alleges that SANUS practices the admitted prior art criticized by the applicant, rather than infringement. There are no allegations in Symbology's Complaint that show SANUS has used any QR Code scanner to perform the steps in Claim 6. As demonstrated above, any such allegation would be objectively unreasonable in view of the claim language and disclosures, and amending the Complaint to add the missing allegations would be futile. *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 577 (2007) at 577.

19

## VI.    CONCLUSION

For the foregoing reasons, SANUS respectfully requests that the Court dismiss Symbology's Complaint for failure to state a claim upon which relief can be granted. Because leave to amend would be futile, SANUS requests dismissal with prejudice.


Dated:  June 28, 2018                         FISH & RICHARDSON P.C.


                                              By:  */s/ Jeremy D. Anderson*
                                                   Jeremy D. Anderson (#4515)
                                                   222 Delaware Avenue, 17th Floor
                                                   P. O. Box 1114
                                                   Wilmington, DE  19899-1114
                                                   (302) 652-5070 Telephone
                                                   (302) 652-0607 Facsimile
                                                   janderson@fr.com

                                                   Neil J. McNabnay
                                                   David B. Conrad
                                                   Ricardo J. Bonilla
                                                   Theresa M. Dawson
                                                   Rodeen Talebi
                                                   1717 Main Street, Suite 5000
                                                   Dallas, Texas 75201
                                                   (214) 747-5070 (Telephone)
                                                   (214) 747-2091 (Facsimile)
                                                   mcnabnay@fr.com
                                                   conrad@fr.com
                                                   rbonilla@fr.com
                                                   tdawson@fr.com
                                                   talebi@fr.com

                                                   ATTORNEYS FOR DEFENDANT
                                                   MILESTONE AV TECHNOLOGIES LLC,
                                                   D/B/A SANUS

20